UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAVID C. SINGH, *et al.*,

      Plaintiffs,

    v.

SUFFOLK COUNTY, *et al.*,

      Defendants.

_____

21-CV-813-LJV
DECISION & ORDER

On July 15, 2021, the plaintiffs, David C. Singh and Shaunna Russell,

commenced this action under 42 U.S.C. § 1983.  Docket Item 1.  They say that the

defendants—Suffolk County, Robert Genna, and Robert Petro (the "Suffolk County

defendants"), as well as two unidentified members of the "Buffalo Warrant Squad"—

violated their constitutional rights by falsely arresting and charging Singh for his alleged

role in a robbery that occurred on Long Island.  *See id.*

On November 29, 2021, the Suffolk County defendants moved to dismiss the

complaint under Federal Rule of Civil Procedure 12(b)(6) for failing to state a viable

claim.[1]  Docket Item 12.  On January 14, 2022, Singh and Russell responded to the

motion to dismiss, Docket Item 15, and on February 24, 2022, the Suffolk County

defendants replied, Docket Item 20.

_____

[1] The Suffolk County defendants also moved for judgment on the pleadings
under Federal Rule of Civil Procedure 12(c), *see* Docket Item 12, but they have not yet
answered the complaint.  Regardless, "the standard for addressing a Rule 12(c) motion
for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion."  *Ezra v.
Bristol-Myers Squibb Co.*, 784 F. App'x 48, 49 (2d Cir. 2019) (summary order)
(alterations omitted); *see also id.* ("[C]ourts typically will construe a premature Rule
12(c) motion[] as if it were brought under Rule 12(b) . . . .").

For the reasons that follow, the Suffolk County defendants' motion is granted in part and denied in part.  Singh's false arrest/false imprisonment claim against Petro may proceed, but his other claims will be dismissed unless he amends the complaint within 30 days of the date of this order to correct the deficiencies noted below.  Russell's claims are dismissed without leave to amend.

## FACTUAL BACKGROUND[2]

Singh and Russell "are an engaged couple who share children and live" in Gowanda, New York.  Docket Item 1 at ¶ 17.  On September 12, 2017, Singh cut a customer's hair at his newly opened barbershop in Gowanda, *id.* at ¶¶ 18-19, and that evening, Singh and his customer posted photos of the haircut on social media*, id.* at ¶ 19.  Singh then finished up at the barbershop and returned to Russell's parents' house for the night.  *Id.* at ¶ 20.

Later that night, some 400 miles away in Islip, New York, two masked individuals committed an armed robbery.  *Id.* at ¶¶ 13, 17.  Local law enforcement could not "identify the suspects responsible for the robbery"—a "source of public embarrassment for the Suffolk County Police Department," Singh says.  *Id.* at ¶ 14.

Eventually, law enforcement tested a bloody glove left at the scene for DNA.  *Id.* at ¶ 23.  In May 2018, Genna, an employee of the Suffolk County Crime Laboratory, received a letter identifying a purported positive match between the DNA sample taken

---

[2] Unless otherwise noted, the following facts are taken from the complaint, Docket Item 1.  On a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

from the glove and a sample "taken from [] Singh" more than a decade earlier "during his incarceration for an unrelated crime." *Id.* at ¶¶ 11, 24-26.  That letter cautioned "that 'if legal action is anticipated based on this information, it is strongly recommended that a new DNA specimen be collected from [Singh].'"  *Id.* at ¶ 25 (alterations omitted).  The letter further recommended that this "new DNA specimen should then be submitted to [the Suffolk County Crime Laboratory] for appropriate confirmatory analysis."[3]  Docket Item 12-1 at 5.

Law enforcement did not obtain another DNA sample from Singh, Docket Item 1 at ¶ 27, but nevertheless pursued Singh as a suspect.  On April 24, 2019, Singh and Russell were "woken up by a loud knock at their front door."  *Id.* at ¶ 28.  Approximately eight to ten officers from various law enforcement agencies were outside the couple's home, including two officers who identified themselves as part of the "Buffalo Warrant Squad."  *Id.* at ¶¶ 29-30.  The officers told Singh that "he needed to come with them and talk to Suffolk County law enforcement[ and ]prosecutors."  *Id.* at ¶ 31.  When Singh and Russell asked why, the officers "were vague and told [them] 'you know what this is about.'"  *Id.* at ¶ 33.

Singh says that the officers, who did not have an arrest warrant, showed up at his door in large numbers to "coerce his 'consent'" and intimidate him into "voluntarily turn[ing] himself in."  *Id.* at ¶¶ 46-47.  And Singh and Russell say that this was all part of an overarching plan by the Suffolk County Police Department to arrest a suspect and

---

[3] Because the letter identifying the purported DNA match is "incorporated by reference in the complaint," the Court considers it in deciding the motion.  *See U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

therefore save face in light of "increasing pressure [due to its] fail[ure] to identify and arrest the armed robbers." *Id.* at ¶ 48.

Singh "reasonably did not believe that he had" any choice other than to comply, so he acceded to law enforcement's request. *Id.* at ¶ 45. He was placed in an unmarked police vehicle and taken to the New York State Trooper Barracks in Elmira, New York. *Id.* at ¶¶ 34, 39. From there, he was turned over to Suffolk County police officers, including Petro, "who drove [] Singh the rest of the way to the Suffolk County Correctional Facility." *Id.* at ¶ 39.

Singh spent the night there and was arraigned the next day. *Id.* at ¶¶ 50-51. He then was released after Russell paid the $100,000 bail, but he "was left with finding his own transportation back to Gowanda." *Id.* at ¶¶ 52-53.

For more than a year, Singh fought the charges against him. *Id.* at ¶¶ 54-69. All the while, Singh's legal fees for his "high-priced" local attorney climbed and Singh's barbershop business suffered. *Id.* at ¶¶ 54, 70-77. His attorney repeatedly gave county prosecutors evidence of Singh's innocence, including the photo of the September 12 haircut posted on social media and cell phone records showing that Singh was far from Islip on the night of the robbery. *Id.* at ¶¶ 54-68. But it was not until October 15, 2020, that the charges against Singh were dismissed. *Id.* at ¶ 69.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[A]lthough 'a court must accept as true all of the allegations contained in a complaint,' that tenet 'is inapplicable to legal conclusions,' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

Singh and Russell bring claims under 42 U.S.C. § 1983 for false arrest, false imprisonment, malicious prosecution, conspiracy, and municipal liability.[4]  Docket Item 1 at ¶¶ 82-122. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).

---

[4] Singh and Russell do not distinguish any defendants throughout the complaint, and they therefore seem to assert claims against Suffolk County for false arrest, false imprisonment, malicious prosecution, and conspiracy in addition to their claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  To the extent that Singh and Russell allege that Suffolk County is vicariously liable for the constitutional violations of its employees, those claims are dismissed.  *See Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable under [section] 1983 on a *respondeat superior* theory.").

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

## I.    SINGH'S CLAIMS

### A.    False Arrest/False Imprisonment

"A [section] 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law."[5] *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citation omitted).  "Under New York law, to prevail on a claim for false arrest, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (alterations, citation, and internal quotation marks omitted).

An arrest is privileged if it was made with probable cause.  *See id.* ("Probable cause to arrest is a complete defense to an action for false arrest.").  "Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the

---

[5] Because "[f]alse arrest is simply false imprisonment accomplished by means of an unlawful arrest," this Court addresses Singh's false arrest and false imprisonment claims together.  *See Jenkins v. City of New York*, 478 F.3d 76, 88 n.10 (2d Cir. 2007) ("False arrest and false imprisonment are largely synonymous because an imprisonment starts at the moment of arrest.").

belief that an offense has been or is being committed by the person to be arrested."
*Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014).

### 1.   Probable Cause

The Suffolk County defendants argue that Singh's confinement was privileged because the DNA test and Singh's prior criminal record established probable cause for his arrest.[6]  *See* Docket Item 12-2 at 13-16.  Drawing every inference in Singh's favor, as it must at this stage of the case, this Court disagrees.

Singh concedes that Suffolk County law enforcement received a report that purportedly identified a match between DNA recovered from the Islip crime scene and a sample "taken from [] Singh" more than a decade earlier.  *See* Docket Item 1 at ¶¶ 22-26.  But Singh also correctly observes that the letter notifying Suffolk County law enforcement of that positive match "strongly recommended that a new DNA specimen be collected from [Singh]" if criminal proceedings were "anticipated based on [the match]."  *Id.* at ¶ 24; Docket Item 12-1 at 5.  Indeed, the letter suggested that Suffolk

---

[6] For the reasons stated below, the Suffolk County defendants have not established probable cause or arguable probable cause based on the purported DNA match.  And Singh's "prior record of felonies," *see* Docket Item 12-2 at 15, does not change that result.  Other than by vaguely referring to Singh's criminal record, the Suffolk County defendants do not say how that prior record has any bearing on the armed robbery in Islip or why a "person of reasonable caution" would have believed that Singh committed the robbery based on Singh's prior convictions.  *See Betts*, 751 F.3d at 82.  Without more information, the Court cannot speculate about what connection, if any, Singh's prior record had to the probable cause determination.  *Cf. Pacicca v. Stead*, 456 F. App'x 9, 11-12 (2d Cir. 2011) (summary order) (finding that "a reasonable officer could believe that when a person repeatedly drives his car over a curb onto city property, there is probable cause to arrest and prosecute [that person] for violating an order of protection issued because the person had previously engaged in similar conduct").

County take additional steps to test the second DNA sample for "appropriate confirmatory analysis."  Docket Item 12-1 at 5.

But Suffolk County law enforcement did not follow that recommendation or undertake any "confirmatory analysis" before Singh was taken into custody; in fact, Singh never provided a second sample.  *See* Docket Item 1 at ¶ 27.  And Singh was arrested and arraigned even though the letter identifying the match "strongly recommended" that law enforcement take additional steps if "legal action [was] anticipated based on this information."  Docket Item 12-1 at 5.

The Second Circuit has noted that "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 1250 (1983)); *see also Mitchell v. City of New York*, 841 F.3d 72, 77-79 (2d Cir. 2016) (same).  Here, Suffolk County law enforcement's failure to confirm the purported DNA match—that is, law enforcement's failure to do what the letter "strongly recommended" that they do, *see* Docket Item 12-1 at 5—is evidence of a lack of probable cause here.  *See Lowth*, 82 F.3d at 571; *see also Watkins v. Martin*, 2015 WL 2127216, at *1 (N.D. Ill. Apr. 29, 2015) (denying motion to dismiss false arrest claim where the plaintiff alleged that the defendant "arrested him solely on the basis of [a] DNA report," which showed a DNA match but also "noted[] 'do not arrest solely on the basis of this DNA information'" (alterations omitted)).  After all, there must have been some reason for the admonition to test Singh again if legal proceedings were anticipated based on the purported DNA match— perhaps because of the accuracy of the test, the age of the sample taken from Singh, or

some other possible deficiency.  But Suffolk County law enforcement did not heed that warning before Singh's arrest.  And for that reason, the Suffolk County defendants have not shown that Singh's confinement was privileged because there was probable cause to arrest him.  *See Mitchell*, 841 F.3d at 77 ("Where an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense." (citation and internal quotation marks omitted)).

For similar reasons, this Court concludes that the Suffolk County defendants have not established that Petro had arguable probable cause to detain Singh or that Petro's actions were objectively reasonable.[7]  "Even where actual probable cause does not exist, an officer may be entitled to qualified immunity on a [section] 1983 false arrest claim if his actions were objectively reasonable or if arguable probable cause existed at the time of the arrest."  *Triolo v. Nassau County*, 24 F.4th 98, 107 (2d Cir. 2022) (internal quotation marks omitted).  "A police officer has arguable probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."[8]  *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (citation and internal quotation marks omitted).

---

[7] For the reasons stated below, Singh has sufficiently alleged the remaining elements of a false arrest/false imprisonment claim against Petro.  Singh has not alleged a viable false arrest/false imprisonment claim against Genna, however, so this Court does not address whether Genna is entitled to qualified immunity.

[8] In his response brief, Singh—in a perhaps unintentional concession—argues that Suffolk County law enforcement had "at best . . . reasonable suspicion" to believe "that [] Singh may be a person of interest who should be questioned in connection with the alleged [robbery]."  Docket Item 15-2 at 10.  The Suffolk County defendants seize on that to argue that Singh has conceded that his arrest was reasonable and that the

The Second Circuit "has admonished defendants moving to dismiss a suit by reason of qualified immunity that they would in almost all cases be well advised to move for summary judgment, rather than for dismissal under Rule 12(b)(6) or 12(c)." *Pourkavoos v. Town of Avon*, 823 F. App'x 53, 59 (2d Cir. 2020) (summary order) (alterations, citation, and internal quotation marks omitted); *see also Barnett v. Mount Vernon Police Dep't*, 523 F. App'x 811, 813 (2d Cir. 2013) (summary order) ("[A] motion to dismiss is a mismatch for immunity and almost always a bad ground of dismissal." (citation and internal quotation marks omitted)).  So "asserting qualified immunity as a defense in the earliest stages of litigation, before development of a relevant factual record, usually fails to result in dismissal of the complaint."  *Pourkavoos*, 823 F. App'x at 59.  And that certainly is true here.

Singh alleges that Petro arrested him on the basis of a DNA report that "strongly recommended" that law enforcement obtain a "new DNA specimen" if "legal action is anticipated based on" the purported DNA match.  Docket Item 12-1 at 5.  In fact, the letter recommended that the "new DNA specimen should [] be submitted to [the Suffolk County Crime Laboratory] for appropriate confirmatory analysis."  *Id.*  But law enforcement never procured that second sample before arresting Singh.  Docket Item 1 at ¶ 27.  And this Court has no reason to believe that it was objectively reasonable to ignore the letter's warning before the arrest.

---

individual defendants are entitled to qualified immunity.  *See* Docket Item 20 at 7 n.2. Although Singh's argument may be poorly phrased, this Court does not read the plaintiffs' brief as conceding the issue.  *See* Docket Item 15-2 at 11-12 (arguing that there was not even arguable probable cause for the arrest).

For the reasons stated above, the Court concludes that Singh has adequately alleged that his confinement was not privileged—more specifically, that Suffolk County law enforcement officers "fail[ed] to make a further inquiry when a reasonable person would have done so." *See Lowth*, 82 F.3d at 571. For similar reasons, and "before development of a relevant factual record," *see Pourkavoos*, 823 F. App'x at 59, this Court cannot conclude at this point that Petro's probable cause determination was objectively reasonable or that officers of reasonable competence could disagree about whether probable cause existed, *see Figueroa*, 825 F.3d at 100. So Petro is not entitled to qualified immunity on Singh's false arrest/false imprisonment claim, at least at this stage of the proceedings.

### 2.   Confinement

Singh also has adequately alleged the remaining elements of a false arrest/false imprisonment claim against Petro. Although the allegations in Singh's complaint are thin, he alleges that Petro, a detective in the Suffolk County Police Department involved in the investigation, took Singh from the New York State Trooper Barracks in Elmira and drove him to the Suffolk County Correctional Facility to be arraigned. *See* Docket Item 1 at ¶¶ 10, 39, 50-51. At this stage, that is enough to allege that Petro intentionally confined Singh. *See Ashley*, 992 F.3d at 136. And the Suffolk County defendants do not dispute that Singh has alleged that he did not consent to the confinement and was conscious of that confinement. *See generally* Docket Items 12-2, 20; *see also Ashley*, 992 F.3d at 136.

Singh's false arrest/false imprisonment claim against Genna is not viable, however, because he has not alleged that Genna confined him. *See Ashley*, 992 F.3d

11

at 136.  The sum total of Singh's factual allegations about Genna's conduct is that

Genna "was notified" of the purported DNA match in May 2018.  Docket Item 1 at ¶ 24.

Singh does not allege that Genna took any further action in the investigation or that

Genna even was aware of Singh's arrest and prosecution a year later.

Singh argues that Genna nevertheless is liable for false arrest and false

imprisonment because his actions "ultimately led to [] Singh's arrest."  Docket Item 15-2

at 14.  But other courts have declined to impose such sweeping liability for false arrest

or false imprisonment on any law enforcement officer who simply participated in an

investigation that led to an arrest.  *See, e.g.*, *Grant v. City of New York*, 2019 WL

1099945, at *7 (E.D.N.Y. Mar. 8, 2019) (dismissing false arrest claim because "although

[the officer] was involved in the pre-arrest phase of the investigation to at least some

extent, there is no evidence that she took any action which might foreseeably have

caused [the plaintiff] to suffer an unconstitutional arrest" (citation omitted)).  And Singh

has not alleged anything to suggest how Genna, an employee of the Suffolk County

Crime Laboratory, could be liable for false arrest or false imprisonment by receiving the

DNA match report a year before Singh's arrest.

For those reasons, Singh's false arrest/false imprisonment claim against Petro

may proceed.  And Singh may amend his complaint to allege how Genna could be liable

for Singh's false arrest or imprisonment.

### B.    Malicious Prosecution

"To prevail on a malicious prosecution claim under New York law and federal

law, a plaintiff must show: (1) the commencement or continuation of a criminal

proceeding by the defendant against the plaintiff, (2) the termination of the proceeding

in favor of the accused, (3) the absence of probable cause for the criminal proceeding[,] and (4) actual malice."[9]  *Kee v. City of New York*, 12 F.4th 150, 161-62 (2d Cir. 2021) (citation and internal quotation marks omitted).  "For a malicious prosecution claim under [s]ection 1983, a plaintiff also must demonstrate a 'sufficient post-arraignment liberty restraint.'"  *Id.* (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)).

"In malicious prosecution cases against police officers," plaintiffs have established that officers commenced or continued criminal proceedings "by showing that officers brought formal charges and had the person arraigned, or filled out complaining and corroborating affidavits, or swore to and signed a felony complaint." *Rodriguez v. City of New York*, 590 F. Supp. 3d 518, 534 (E.D.N.Y. 2022) (quoting *Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005)); *see also Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ("Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments.").  "In addition, a police officer may be held liable for malicious prosecution when he creates false information likely to influence a jury's decision and forwards that information to prosecutors."  *Maldonado v. City of New York*, 2014 WL 787814, at *6

---

[9] The Suffolk County defendants argue that Singh has not adequately demonstrated favorable termination of the criminal proceedings because he has not shown that the dismissal of the charges against him was indicative of innocence.  *See* Docket Item 12-2 at 18.  After the Suffolk County defendants' motion was fully briefed, the Supreme Court held that a plaintiff "need only show that his prosecution ended without a conviction" to "demonstrate a favorable termination of a criminal prosecution for purposes of [a] Fourth Amendment claim under [section] 1983 for malicious prosecution."  *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022).  Because the criminal prosecution against Singh ended without a conviction, he has alleged favorable termination for the purposes of a section 1983 malicious prosecution claim.

(S.D.N.Y. Feb. 26, 2014) (citation and internal quotation marks omitted).  So to show

that a defendant initiated or continued criminal proceedings, a plaintiff must allege that

the defendant "d[id] more than report the crime or give testimony"; instead, the

defendant "must play an active role in the prosecution, such as giving advice and

encouragement or importuning the authorities to act."  *Manganiello v. City of New York*,

612 F.3d 149, 163 (2d Cir. 2010) (alterations, citation, and internal quotation marks

omitted).

Singh says that Genna and Petro are liable for malicious prosecution because

they "each took actions that instigated [his] arrest and prosecution."  Docket Item 15-2

at 15.  But apart from citing general principles of causation for section 1983 claims, *see*

*id.* at 13-15, Singh does not say how Genna or Petro played any active role in Singh's

prosecution—including, for example, by signing a charging document.  *See Rodriguez*,

590 F. Supp. 3d at 534.  Instead, Singh says simply that Genna received a copy of a

DNA match report purportedly linking Singh to the crime scene and that Petro was

involved in Singh's arrest.[10]  *See* Docket Item 1 at ¶¶ 24-26, 39.  Because he has not

alleged that Genna or Petro participated in initiating or continuing criminal proceedings

---

[10] In response to the Suffolk County defendants' motion, Singh and Russell submitted various documents purportedly showing that Petro "led the investigation regarding the September 12, 2017 armed robbery."  Docket Item 15-2 at 13; *see also* Docket Item 15-1.  They therefore claim that "it is plausible that [Petro] decided what, and even if any, charges would be brought against [] Singh for the unsolved crime."  Docket Item 15-2 at 13.  And Singh and Russell claim that Genna is liable for malicious prosecution because he "forwarded the [DNA] report to [] Petro, who was in charge of the investigation of the September 12, 2017 armed robbery."  *See id.* at 5 (alleging that conduct without citation to the complaint).  But plaintiffs are "not entitled to amend [their] complaint through statements made in motion papers," *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998), so this Court does not consider those allegations in deciding this motion.

against him, Singh has not stated a viable malicious prosecution claim against either of them. *See Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) ("While police officers do not generally 'commence or continue' criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to play an active role in the prosecution . . . ." (alterations, citation, and internal quotation marks omitted)); *Pierre v. Rocco*, 2021 WL 950021, at *3 (E.D.N.Y. Mar. 12, 2021) ("It has long been settled that participation in the arrest, without more, is insufficient to establish the requisite initiation [of criminal proceedings]."); *cf. Jorgensen v. County of Suffolk*, 558 F. Supp. 3d 51, 64 (E.D.N.Y. 2021) (denying motion to dismiss malicious prosecution claim against crime lab employees who allegedly "manipulated" the "crucial evidence used to indict [the] plaintiff").

For those reasons, Singh has not stated a viable malicious prosecution claim. Nevertheless, he may amend his complaint to allege how Genna and Petro commenced or continued the criminal proceedings against him and to otherwise allege the remaining elements of a malicious prosecution claim.

### C.    Conspiracy

"In order to state a claim for conspiracy under [s]ection 1983, a plaintiff must allege: (1) an agreement between two or more actors (at least one a state actor); (2) to act in concert to cause an unconstitutional injury; and (3) an overt act done in furtherance of that agreement, causing damages." *Ocasio v. City of Canandaigua*, 513 F. Supp. 3d 310, 323 (W.D.N.Y. 2021) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)).  Although "[a]llegations of direct evidence of conspiracy are

not necessary" to state a viable conspiracy claim, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his or her constitutional rights are properly dismissed."  *D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 363 (S.D.N.Y. 2017) (alterations omitted).  So "[f]or claims of [section] 1983 conspiracies to survive a motion to dismiss, the plaintiff must provide some factual basis supporting a meeting of the minds."  *Id.* (alterations omitted).

Singh says, "upon information and belief," that officers from the Suffolk County Police Department and the "Buffalo Warrant Squad" conspired to "bring an unnecessary number of law enforcement agents" to Singh's home to "coerce his 'consent' and arrest him for a crime he did not commit."  Docket Item 1 at ¶ 47.  And Singh says, "[u]pon information and belief," that Suffolk County Police Department officers developed this plan because the department faced "increasing pressure [for its] fail[ure] to identify and arrest the armed robbers."  *Id.* at ¶ 48.

The only non-conclusory factual allegation that Singh offers to corroborate this alleged conspiracy, however, is that eight to ten law enforcement officers showed up at his home to arrest him.  Otherwise, Singh does not offer any support for his theory about the purported public pressure on the Suffolk County Police Department, the Suffolk County Police Department's response to that pressure, its interactions with unnamed officers from the "Buffalo Warrant Squad," or any "meeting of the minds" between law enforcement officers.[11]  So Singh has pleaded nothing more than the sort

---

[11] Singh points to a few news articles in his response brief, *see* Docket Item 15-2 at 3 n.3, apparently to support the narrative that the Suffolk County Police Department faced public pressure to identify and arrest a suspect for the robbery.  Again, those

of "vague and unsubstantiated" allegations of conspiracy that are insufficient to state a viable claim. *Kim v. Saccento*, 2022 WL 9583756, at *2 (2d Cir. Oct. 17, 2022) (summary order); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

For those reasons, Singh's conspiracy claim is not viable. Nevertheless, he may amend his complaint to plausibly allege the elements of a section 1983 conspiracy claim.

### D.    *Monell*

A municipality cannot be held liable under section 1983 unless the challenged action was undertaken pursuant to a municipal policy, custom, or practice. *See Monell*, 436 U.S. at 694. To state a claim under *Monell*, a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)). To satisfy that first element, a plaintiff may establish a policy or custom by alleging

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising [policymaker] must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

---

articles cannot fill factual gaps in the complaint. *See Wright*, 152 F.3d at 178. In any event, Singh does not say how this Court can make the logical leap from local press coverage about an armed robbery to a law enforcement conspiracy to violate Singh's constitutional rights.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations

omitted); *see also Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13 (2d Cir.

2015) (summary order) ("[A] plaintiff must allege the existence of a formal policy which

is officially endorsed by the municipality[;] or a practice so persistent and widespread

that it constitutes a custom or usage of which supervisory authorities must have been

aware[;] or that a municipal custom, policy, or usage can be inferred from evidence of

deliberate indifference of supervisory officials to such abuses."); *Roe v. City of

Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) ("Where a plaintiff seeks to hold a

municipality liable for a single decision by a municipal policymaker, the plaintiff must

show that the official had final policymaking power [and] the challenged actions must be

within that official's area of policymaking authority." (alterations, citations, and internal

quotation marks omitted)).

Singh says that his claim against Suffolk County falls within the fourth category of

municipal policies or customs because Suffolk County "employees were deliberately

indifferent to [his] rights."[12]   Docket Item 15-2 at 22; *see also* Docket Item 1 at 16

---

[12] Singh also brought official-capacity claims against Genna and Petro, *see*
Docket Item 1 at 1, perhaps suggesting that he intended to bring a claim under the
second category of *Monell* liability, *see Brandon*, 705 F. Supp. 2d at 276; *see also
Boyler v. City of Lackawanna*, 287 F. Supp. 3d 308, 316 (W.D.N.Y. 2018) ("Claims
against municipal officials in their official capacities are really claims against the
municipality." (alterations omitted)).   In response to the defendants' motion, Singh
agrees that those claims should be dismissed "[t]o the extent that this Court agrees that
the complaint plausibly alleges a claim for municipal liability" against Suffolk County.
*See* Docket Item 15-2 at 19 n.12.   But Singh's official-capacity claims are not viable
regardless of whether his complaint otherwise alleges a plausible claim against Suffolk
County.   To state a viable *Monell* claim based on an action taken in a defendant's
official capacity, a plaintiff must allege that the municipal official "had final policymaking
power" and that the challenged action was "within that official's area of policymaking
authority."   *Roe*, 542 F.3d at 37; *see also id.* at 41 ("An official acts within his official
policymaking capacity when he acts in accordance with the responsibility delegated [to]

(bringing a claim against Suffolk County for its "failure to supervise and train" (capitalization removed)).   In other words, he says that because its employees were so deficient here, Suffolk County is necessarily responsible for failing to train or supervise them.

In limited circumstances, a municipality may be held liable for its failure to train, supervise, or discipline its employees.  *See Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).  But "[w]here plaintiffs seek to hold a municipality liable under a theory of failure to [train,] supervise[,] or discipline, . . . they must also show that the municipal policymaker acted with deliberate indifference."  *Pipitone v. City of New York*, 57 F. Supp. 3d 173, 191 (E.D.N.Y. 2014) (citing *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989)).

"[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation and internal quotation marks omitted).  "To establish 'deliberate indifference,' a plaintiff must show that [1] a policymaker knows to a moral certainty that [municipal] employees will confront a particular situation; [2] the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation; and [3] the wrong choice by the [municipal] employee will frequently cause the

---

him under state law for making policy in that area of the municipality's business.").
Singh has not included any allegations to suggest that Genna or Petro had final
policymaking authority and acted within the scope of that authority in violating Singh's
rights.

deprivation of a citizen's constitutional rights." *Wray*, 490 F.3d at 195-96 (citation and internal quotation marks omitted).

Alternatively, "deliberate indifference may be inferred where the need for more or better supervision to protect against constitutional violations was obvious, but the policymaker failed to make meaningful efforts to address the risk of harm to [the] plaintiff[]." *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (alterations, citations, and internal quotation marks omitted).  "While the Supreme Court has left open the possibility that a single incident could give rise to liability for failure to train or supervise, the Court has cautioned that only a 'narrow range' of circumstances would support such single-incident liability, where the 'unconstitutional consequences of failing to train were patently obvious.'" *Schnitter v. City of Rochester*, 931 F. Supp. 2d 469, 475 (W.D.N.Y. 2013) (alterations omitted) (quoting *Connick*, 563 U.S. at 63), *aff'd*, 556 F. App'x 5 (2d Cir. 2014).  Similarly, the Second Circuit has noted that a policy of acquiescing in or ratifying illegal conduct "cannot be inferred from the failure of those in charge to discipline a single police officer for a single incident of illegality; instead, there must be more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct." *Lucente v. County of Suffolk*, 980 F.3d 284, 306 (2d Cir. 2020) (citation and internal quotation marks omitted).

Beyond detailing the circumstances of his own arrest and prosecution, Singh offers only vague and conclusory allegations about some broader Suffolk County policy or custom. *See, e.g.*, Docket Item 1 at ¶ 118 ("Prior to April 24, 2019, [the d]efendants developed and maintained policies, customs, and practices exhibiting deliberate indifference to the constitutional rights of others, which caused the violation of [] Singh's

rights.").  "In such circumstances, where the complaint fails to allege any facts to support the contention that the challenged actions were in any way related to a custom or policy promulgated by" the municipal defendant, "the pleading is insufficient" to state a viable claim.  *D'Alessandro v. City of New York*, 713 F. App'x 1, 10 (2d Cir. 2017) (summary order) (alterations, citation, and internal quotation marks omitted); *see also, e.g.*, *id.* at 10-11 ("To establish a 'failure to train' claim, a plaintiff must generally demonstrate that there has been a 'pattern of similar constitutional violations by untrained employees.'" (quoting *Connick*, 563 U.S. at 62)); *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) ("To prove [] deliberate indifference, the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious," such as through "proof of repeated complaints of civil rights violations[] . . . followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents."); *Askew v. Lindsey*, 2016 WL 4992641, at *5 (S.D.N.Y. Sept. 16, 2016) (collecting cases holding that a single failure to discipline "cannot give rise to an inference of deliberate indifference without further evidence of a municipal policy or practice").  So Singh has not plausibly alleged a *Monell* claim based on a policy or custom of similar violations.

Nor do Singh's claims fall within the "narrow range of circumstances" in which "a pattern of similar violations might not be necessary to show deliberate indifference." *See Connick*, 563 U.S. at 63.  For example, Singh's claim that he was unlawfully prosecuted because the charges against him were not resolved "in a timely fashion," Docket Item 15-2 at 22, is the sort of claim that is "squarely foreclosed by *Connick*," *D'Alessandro*, 713 F. App'x at 11.  "The *Connick* Court explained that because

21

prosecutors are subject to a rigorous 'regime of legal training and professional responsibility,' a municipality cannot be said to be on notice of a recurrent problem in a district attorney's office simply because a prosecutor erred in one case." *Id.* (citing *Connick*, 563 U.S. at 66-67). So Singh's protestations about the prosecution of the charges against him in his own particular case do not state a viable *Monell* claim.

Any *Monell* claim based on Singh's arrest likewise is not viable. In *Connick*, the Supreme Court outlined the possible "rare" circumstance in which a municipality might be held liable for its failure to train based on a single incident of alleged misconduct. *See Connick*, 563 U.S. at 64. There, the Supreme Court distinguished the "hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Id.* at 63 (citing *Canton*, 489 U.S. at 390 n.10). In that scenario, "[g]iven the known frequency with which police attempt to arrest fleeing felons and the 'predictability that an officer lacking specific tools to handle that situation will violate citizens' rights,'" a municipality's failure to train its officers "could reflect the city's deliberate indifference to the 'highly predictable consequences'" of the untrained officers' actions. *Id.* at 63-64 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).

Here, by contrast, Singh's claims arise in the particular circumstances of his arrest and prosecution based on the purported DNA match. And there is no indication that Suffolk County law enforcement regularly face the same "highly predictable constitutional danger" of false arrest or baseless prosecution in similar circumstances. *Id.* at 67 (internal quotation marks omitted). So this is not the sort of case where a law

enforcement officer's "utter lack of an ability to cope with constitutional situations" make it a "highly predictable consequence" that law enforcement would violate an individual's constitutional rights, and a single-incident *Monell* claim therefore is not viable.  *Id.* at 64, 67.

For those reasons, Singh has not alleged that a viable *Monell* claim against Suffolk County.  Nevertheless, he may amend his complaint to allege how some Suffolk County policy or custom violated his constitutional rights.[13]

## II.    RUSSELL'S CLAIMS

Finally, the Suffolk County defendants say that Russell's claims must be dismissed because she has not alleged that the Suffolk County defendants deprived her of any constitutional right.  *See* Docket Item 12-2 at 22.  Russell did not respond to that argument.  *See generally* Docket Item 15-2.  And the claims in the complaint—false arrest and false imprisonment, malicious prosecution, conspiracy, and municipal liability—all relate to conduct that allegedly violated Singh's, not Russell's, constitutional rights.  *See* Docket Item 1.  Russell therefore has not stated a viable claim under section 1983.  *See Glob. Network Commc'ns, Inc. v. City of New York*, 2008 WL 215892, at *4 (S.D.N.Y. Jan. 22, 2008) ("[I]t is a 'well-settled principle that a [s]ection 1983 claim must be based upon the violation of [a plaintiff's] personal rights, and not the rights of someone else.'" (quoting *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990)).  Because Russell has neither alleged how her constitutional rights were violated

---

[13] Because Singh's claim against Suffolk County is subject to dismissal, this Court does not pass on the viability of Singh's (now withdrawn) request for punitive damages against Suffolk County.  *See* Docket Item 15-2 at 3 n.1.

nor suggested how leave to amend might cure that deficiency, her claims are dismissed without leave to amend.

## **CONCLUSION**

For the reasons stated above, the Suffolk County defendants' motion to dismiss, Docket Item 12, is GRANTED in part and DENIED in part.  Russell's claims are dismissed without leave to amend, and the Clerk of the Court shall terminate Russell as a plaintiff in this case.  Singh's false arrest/false imprisonment claim against Petro may proceed, and he may amend his remaining claims within 30 days of the date of this order.

If Singh does not file an amended complaint within 30 days, then his claims against Genna and Suffolk County, as well as his malicious prosecution and conspiracy claims against Petro, will be dismissed without further order, and the Clerk of the Court shall terminate Genna and Suffolk County as defendants in this case.  The Suffolk County defendants may answer, move against, or otherwise respond to any amended complaint within 30 days of its filing.  If Singh does not file an amended complaint, Petro's time to answer the complaint is extended until 60 days from the date of this decision.

SO ORDERED.

Dated:   February 17, 2023
         Buffalo, New York


                                        */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE