UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAVID C. SINGH,

               Plaintiff,

      v.

ROBERT PETRO et al.,[1]

               Defendants.

_____

      21-CV-813-LJV-JJM
      DECISION & ORDER

On July 15, 2021, the plaintiff, David C. Singh, commenced this action under 42

U.S.C. § 1983, asserting claims based on his 2019 arrest and ensuing prosecution for

armed robbery.[2]  Docket Item 1.  Singh's complaint named Suffolk County, Suffolk

County Crime Laboratory employee Robert Genna, and Suffolk County Police Detective

Robert Petro as defendants.[3]  *Id.* at 1.[4]  After those defendants moved to dismiss the

complaint, Docket Item 12, this Court denied the motion as to Singh's false arrest and

_____

[1] Because Singh is now the only plaintiff in this case, and because Suffolk County, the original lead defendant, has been terminated as a party, the Clerk of the Court shall update the case caption accordingly.

[2] The initial complaint in this action was filed by counsel on behalf of both Singh and his then fiancée (now wife) Shaunna Russell.  Docket Item 1; *see* Docket Item 46 at ¶ 20.  But this Court dismissed Russell's claims without leave to amend because "the claims in the complaint . . . all relate[d] to conduct that allegedly violated Singh's, not Russell's, constitutional rights" and "Russell therefore ha[d] not stated a viable claim under section 1983."  *See Singh v. Suffolk County*, 2023 WL 2083572, at *10 (W.D.N.Y. Feb. 17, 2023).  The amended and second amended complaints name only Singh as a plaintiff and raise claims only on his behalf.  *See* Docket Items 22 and 46.

[3] The complaint also named two "John Doe" defendants.  Docket Item 1 at 1.

[4] Page numbers in docket citations refer to ECF pagination.

false imprisonment claim against Petro, Docket Item 21; *see Singh v. Suffolk County*, 2023 WL 2083572, at *6 (W.D.N.Y. Feb. 17, 2023).  But the Court held that Singh's remaining claims—including his claims for malicious prosecution and conspiracy— would be dismissed unless he amended his complaint to correct the identified deficiencies.  *Singh*, 2023 WL 2083572, at *7-11.

On March 17, 2023, Singh filed an amended complaint against Petro and two law enforcement officers, "John Doe No. 1" and "John Doe No. 2" (the "John Doe officers"). Docket Item 22.  After Petro answered the complaint, *see* Docket Item 26, this Court referred the case to United States Magistrate Judge Jeremiah J. McCarthy for pretrial proceedings under 28 U.S.C. § 636(b)(1)(A), Docket Item 27.

About a year later, Singh moved to amend his complaint for a second time, Docket Item 44, and Judge McCarthy granted that motion, Docket Item 45.  Singh then filed a second amended complaint—this one naming Petro, New York State Police Senior Investigator Christopher Weber, New York State Trooper Michael Schmit,[5] and the John Doe officers as defendants.[6]  Docket Item 46.  Singh again asserted claims under section 1983 for false arrest and false imprisonment, malicious prosecution, and conspiracy to violate his constitutional rights.  *See id.*  A few weeks later, Petro answered the second amended complaint.  Docket Item 50.

On July 15, 2024, Schmit and Weber moved to dismiss the second amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

---

[5] Michael Schmit's last name is incorrectly spelled with two 't's on the docket. The Clerk of the Court shall update the docket with the correct spelling.

[6] The second amended complaint identified the John Doe officers as officers of the New York State Police.  Docket Item 46 at 1.

Docket Item 60.  Singh responded to that motion and cross-moved to expedite discovery of the identities of the John Doe officers and to extend the time to serve them. Docket Item 62.  Schmit and Weber did not reply, nor did any defendant respond to Singh's cross-motion, and the time to do so has expired.  *See* Loc. R. Civ. P. 7(b)(2)(B).

For the reasons that follow, this Court grants in part and denies in part Schmit and Weber's motion to dismiss and grants Singh's cross-motion to expedite discovery and extend the time for service.

## BACKGROUND[7]

On September 12, 2017, Singh cut a customer's hair at his newly opened barbershop in Perrysburg, New York, and that evening, Singh and his customer posted photos of the haircut on social media.  *See* Docket Item 46 at ¶¶ 20-22.  Singh then finished up at the barbershop and went home for the night.[8]  *Id.* at ¶ 23.

Just before midnight on the same night in the Town of Islip, New York—more than 400 miles away from Singh's barbershop—two masked individuals committed an armed robbery.  *Id.* at ¶¶ 11, 24.  Defendant Petro, a "detective with the Suffolk County Police Department, was assigned to lead the investigation."  *Id.* at ¶ 12.  The investigation soon stalled, and "multiple news stories were published" about the Suffolk

---

[7] The following facts are taken from the second amended complaint, Docket Item 46.  On a motion to dismiss under Rule 12(b)(6), the Court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff.  *See Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016); *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

[8] More specifically, Singh went to Russell's parents' house.  Docket Item 1 at ¶ 23; *see also supra* note 2.

County Police Department's "failure" to solve the crime, which became "a source of public embarrassment for" the department.  *Id.* at ¶¶ 13-14.

Eventually, according to the police, "a bloody glove was found" at the crime scene and sent for DNA testing.  *Id.* at ¶¶ 15-16.  On May 11, 2018, Genna, an employee at the Suffolk County Crime Laboratory, received a report identifying a purported positive match in CODIS[9] between the DNA sample taken from the glove and a sample that had been taken from Singh more than a decade earlier "during his incarceration for an unrelated crime."  *Id.* at ¶¶ 27, 30.  The DNA report cautioned "that 'if legal action is anticipated based on this information, it is strongly recommended that a new DNA specimen be collected from [Singh].'"  *Id.* at ¶ 28 (alteration omitted).

Law enforcement did not obtain another DNA sample from Singh but nevertheless pursued him as a suspect.  *See id.* at ¶¶ 31-32.  On April 24, 2019—almost a year after the Suffolk County Crime Laboratory received the DNA report identifying Singh as a potential match—Singh was "woken up by a loud knock at [his] front door."  *Id.* at ¶¶ 35-36.  Approximately eight to ten officers from various law enforcement agencies were outside his home, including three defendants employed by the New York State Police: State Trooper Schmit and the two John Doe officers.  *Id.* at ¶¶ 8-10, 37, 39-40.  Another defendant, New York State Police Senior Investigator Weber, had assisted by "contact[ing] several of his subordinate officers . . . to coordinate" Singh's arrest.  *Id.* at ¶¶ 7, 38.

---

[9] CODIS, or "Combined DNA Index System," refers to "the FBI's program of support for criminal justice DNA databases as well as the software used to run th[o]se databases."  Docket Item 46 at 5 n.2.

The John Doe officers identified themselves as part of the "Buffalo Warrant Squad," which Singh says refers to "the Violent Felony Warrants . . . Squad of the New York State Police." *Id.* at ¶¶ 40-41.  They told Singh that "he needed to[ ]come with them and talk to Suffolk County law enforcement[ and ]prosecutors." *Id.* at ¶ 44.  When Singh "asked . . . what he was being arrested for," the John Doe officers "were vague" and told him that he "kn[e]w what this [wa]s about." *Id.* at ¶¶ 45-46.

Singh says that the officers, who did not have an arrest warrant, showed up at his door in large numbers to "coerce [his] 'consent'" and "intimidate[]" him into "voluntarily turn[ing] himself in." *Id.* at ¶¶ 48, 55-59.  He says that this was all part of the officers' overarching plan with the Suffolk County Police Department to "arrest [Singh] for a crime he did not commit." *Id.* at ¶ 59.  They did that so that the police department could save face and relieve the "increasing pressure" that resulted when the department "fail[ed] to identify and arrest the armed robbers." *Id.* at ¶ 60.

Singh "reasonably did not believe that he had" any choice other than to comply, so he acceded to law enforcement's request. *Id.* at ¶ 57.  The John Doe officers placed Singh in "the back of an unmarked police vehicle" and drove him to a gas station. *Id.* at ¶¶ 47, 52.  There, the John Doe officers "turned . . . Singh over to Suffolk County" law enforcement, including Petro, who took him "first to the [New York State] Trooper Barracks in Elmira, New York," and then to the Suffolk County Correctional Facility. *Id.* at ¶ 52.  Singh spent the night at that facility and "was arraigned the next day." *See id.* at ¶¶ 62-63.  He then was released after his fiancée "paid a $100,000 bond," but he had to "find[] his own transportation back" to his home "more than 400 miles away." *Id.* at ¶¶ 63-65.

For more than a year, Singh fought the charges against him.  *Id.* at ¶¶ 66-81.

Singh's barbershop business suffered while his legal fees climbed ever higher.  *Id.* at

¶¶ 66, 76, 83-84, 88.  His attorney repeatedly gave county prosecutors evidence of his

innocence, including the photo of the September 12 haircut posted on social media and

cell phone records showing that Singh was far from Islip on the night of the robbery.  *Id.*

at ¶¶ 67-81.  But it was not until October 15, 2020—about a year and a half after Singh

was arrested—that the charges against him were dismissed.  *Id.* at ¶ 82.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "[A]lthough 'a

court must accept as true all of the allegations contained in a complaint,' that tenet 'is

inapplicable to legal conclusions,' and 'threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice.'"  *Harris v. Mills*, 572

F.3d 66, 72 (2d Cir. 2009) (some internal quotation marks omitted) (quoting *Iqbal*, 556

U.S. at 678).

## DISCUSSION

## I.    CLAIMS AGAINST SCHMIT AND WEBER

Singh brings claims against Schmit and Weber under 42 U.S.C. § 1983 for false arrest and false imprisonment, Docket Item 46 at ¶¶ 95-104 (first cause of action), and for conspiracy to violate his constitutional rights, *id.* at ¶¶ 121-126 (third cause of action).[10]

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

### A.    False Arrest and False Imprisonment[11]

As the Court explained in its previous order, "[a section] 1983 claim for false arrest" under the Fourth Amendment "is substantially the same as a claim for false

---

[10] Singh's second cause of action for malicious prosecution is asserted against only Petro.  Docket Item 46 at ¶¶ 105-20.

[11] Singh brings claims for both false arrest and false imprisonment as a single cause of action.  Docket Item 46 at ¶¶ 95-104.  As this Court explained in its previous order, *see Singh*, 2023 WL 2083572, at *3 n.5, "[f]alse arrest is simply false imprisonment accomplished by means of an unlawful arrest," *see Jenkins v. City of New York*, 478 F.3d 76, 88 n.10 (2d Cir. 2007) ("False arrest and false imprisonment are

arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *see Singh*, 2023 WL 2083572, at *3. "Under New York law, to prevail on a claim for false arrest, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (alterations, citation, and internal quotation marks omitted).

Schmit and Weber do not contest that Singh clearly has alleged the second and third required elements. *See* Docket Item 60-1 at 8-9. But they argue that Singh's false arrest and false imprisonment claims against them should be dismissed because (1) Singh has not pleaded that Weber and Schmit were personally involved in arresting him, *id.* at 12-13; (2) Singh's confinement was "otherwise privileged"—that is, the officers had probable cause to arrest Singh based on the directive of their fellow officer, *id.* at 8-9; and (3) even if they lacked probable cause, they are entitled to qualified immunity, *id.* at 14-16.

### 1.    Personal Involvement

"A prerequisite to a claim for damages under [s]ection 1983 . . . is a defendant's 'personal involvement' in the alleged constitutional violation." *Carwell v. City of New York*, 2023 WL 419182, at *5 (S.D.N.Y. Jan. 26, 2023) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001)). To show such involvement, "the plaintiff must directly plead and prove that 'each [g]overnment-official defendant, through the

_____

largely synonymous because an imprisonment starts at the moment of arrest."). This Court therefore addresses Singh's false arrest and false imprisonment claims together.

official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

In the second amended complaint, Singh alleges that Schmit was one of the officers who assembled on his doorstep on April 24, 2019, to arrest him and that Schmit later "drafted the [i]ncident [r]eport [on] the arrest."  Docket Item 46 at ¶¶ 37, 39.  And he alleges that Weber "contacted several of his subordinate officers within the New York State Police to coordinate" Singh's arrest.  *Id.* at ¶ 38.

With respect to the claims against Schmit, allegations that an officer filled out paperwork related to a plaintiff's arrest are sufficient to show that officer's personal involvement.  *See Case v. City of New York*, 233 F. Supp. 3d 372, 397 (S.D.N.Y. 2017) (holding that plaintiff's allegation that officer "processed his arrest" was "sufficient to render plausible [that officer's] personal involvement in . . . [the alleged] false arrest, even though [the officer] may not have been present when [the plaintiff] was seized"); *Legree v. City of Waterbury*, 2024 WL 3964944, at *7 (D. Conn. Aug. 28, 2024) ("'[P]ersonal involvement in an arrest is not limited to officers who were physically involved in taking someone into custody" and several courts in this circuit "have held that completing arrest paperwork can be sufficient to demonstrate personal involvement in an arrest, even for officers who were not present at the scene." (internal quotation marks omitted) (collecting cases)).  What is more, Singh alleges that Schmit not only filled out the paperwork connected to the arrest but also was part of the team that effected the arrest.  Docket Item 46 at ¶¶ 37, 39.

Singh's allegations about Weber also are sufficient at this stage.  The Second Circuit has made clear that a defendant who participates in planning or coordinating a

constitutional violation may be "personally involved" in that violation.  *See Provost*, 262 F.3d at 155 (stating that "ordering or helping others to do . . . unlawful acts" can constitute "personal involvement" for the purposes of liability under section 1983); *cf. Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014) ("[P]lanners may be liable under section 1983 to the extent that a plan for a search or seizure, as formulated and approved by those defendants, provides for and results in an unconstitutionally excessive use of force.").  So Singh's allegation that Weber coordinated the arrest*, see* Docket Item 46 at ¶ 38, is sufficient to allege Weber's personal involvement.

Singh therefore has adequately pleaded that Schmit and Weber were personally involved in his allegedly unconstitutional arrest.[12]

### 2.    Probable Cause

An arrest is privileged if it was made with probable cause.  *See Ashley*, 992 F.3d at 136 ("Probable cause to arrest is a complete defense to an action for false arrest.").  "Probable cause exists when [an officer] has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."  *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (quoting *Williams v. Town of Greenburgh*, 535 F.3d 71, 79 (2d Cir. 2008)); *see Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("[P]robable cause does not require absolute certainty." (quoting *Boyd v. City of New York,* 336 F.3d 72, 76 (2d Cir. 2003)).  "When determining whether probable cause exists[,] courts must consider those facts available

---

[12] The Court thus finds that Singh has adequately pleaded the first element of his false arrest and false imprisonment claim against Schmit and Weber.

to the officer at the time of the arrest and immediately before it" and must take into account the "totality of the circumstances." *Panetta*, 460 F.3d at 395 (emphasis omitted) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)).

Singh says that Petro, the lead investigator in the robbery case, authorized his arrest "[b]ased on nothing more than" the letter identifying his DNA as a potential match to the sample from the robbery—a letter that specifically cautioned that a second sample should be collected before legal action was taken. Docket Item 46 at ¶¶ 27-28, 32, 98. This Court previously held that those allegations were sufficient to state a claim for false arrest and false imprisonment against Petro. *Singh*, 2023 WL 2083572, at *3-6. Indeed, this Court "ha[d] no reason to believe that it was objectively reasonable to ignore the letter's warning before the arrest." *Id.* at *5.

Schmit and Weber acknowledge that holding here. Docket Item 60-1 at 9. But they nonetheless say that even if Petro's conduct in authorizing arrest without heeding the letter's warning was "unreasonable," their own reliance on Petro's instruction to arrest Singh was "objectively reasonable." *Id.* They note that Singh specifically states in the second amended complaint that Petro "recommended and authorized [Singh's] arrest and transport" and that the officers who carried out the arrest did so at Petro's "direction." *Id.* (quoting Docket Item 46 at ¶¶ 32, 36). Further, they say, the second amended complaint does not allege that they "were aware of the letter's warning or [of Petro's] basis for believing that he had probable cause to arrest" Singh. *Id.* And because they were entitled to rely on Petro's instructions in making the probable cause determination, they say, their arrest of Singh was supported by probable cause. *Id.* at 8-9.

11

"Under the collective or imputed knowledge doctrine," courts have held that an arrest can be supported by probable cause even when "the actual arresting . . . officer lacks the specific information to form the basis for probable cause or reasonable suspicion" if "sufficient information to justify the arrest . . . was known by other law enforcement officials initiating or involved with the investigation."   *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001).   As the Second Circuit has explained, this doctrine "was developed in recognition of the fact that with large police departments and mobile defendants, an arresting officer might not be aware of all the underlying facts that provided probable cause or reasonable suspicion."   *Id.*

But as Singh correctly notes, the collective knowledge doctrine has no application to cases in which no officer possessed enough information to establish probable cause.   Docket Item 62-3 at 7-8; *see Colon*, 250 F.3d at 136 (explaining that "application of the imputed knowledge doctrine requires that at some point along the line, some law enforcement official—or perhaps some agglomeration of such officials— involved . . . possess[ed] sufficient information to permit the conclusion that a search or arrest [wa]s justified"); *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971); *see also Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997) ("[S]tatements by fellow officers conveying that there is probable cause for a person's arrest, by themselves, cannot provide the facts and circumstances necessary to support a finding of probable cause. . . . Probable cause exists only if the statements made by fellow officers are supported by actual facts that satisfy the probable cause standard." (internal quotation marks omitted) (citing *Whiteley*, 401 U.S. at 568)).   In other words, the question is whether there was, in fact, probable cause—not whether an officer might

12

have reasonably believed that there was probable cause based on what another officer

told him.[13]

For instance, in *Whiteley*, the Supreme Court reversed the conviction of a man

who was arrested after a police officer recognized him from a description in a radio

bulletin issued by another police department. 401 U.S. at 563-64. The Court held that

because the radio bulletin had been based on a warrant issued without probable cause,

the fact that the arresting officer had relied on the radio bulletin could not make the

arrest constitutional. *Id.* at 568. As Justice Harlan wrote for the majority:

> We do not, of course, question that the [arresting officer was] entitled to act
> on the strength of the radio bulletin. Certainly police officers called upon to
> aid other officers in executing arrest warrants are entitled to assume that
> the officers requesting aid offered the magistrate the information requisite
> to support an independent judicial assessment of probable cause. Where,
> however, the contrary turns out to be true, an otherwise illegal arrest cannot

---

[13] Schmit and Weber argue that they had probable cause to arrest Singh
because regardless of whether Petro had probable cause, it was "reasonable" for them
to believe that he did. *See* Docket Item 60-1 at 8-9. But at least in circumstances
where an officer relies purely on the directive of another officer in effecting an arrest, the
reasonableness of the arresting officer's reliance is not relevant to whether the officer
had probable cause; instead, the reasonableness of the officer's reliance affects the
determination of whether that officer is entitled to qualified immunity. *See Rogers*, 120
F.3d at 454 (holding that because defendants "had no knowledge of facts or
circumstances sufficient to support an independent determination of probable cause"
but rather "relied on the statements of others," the relevant question, for purposes of
determining whether probable cause existed, was whether the officers directing arrest
"ha[d] knowledge of facts and circumstances sufficient to warrant a conclusion of
probable cause" and noting that reasonableness of reliance would come into play only
in determining whether arresting officers were entitled to qualified immunity); *see also*
*United States v. Hensley*, 469 U.S. 221, 232 (1985) (stating that "[i]f the flyer [indicating
that a person is wanted for investigation] has been issued in the absence of a
reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth
Amendment[, but i]n such a situation, of course, the officers making the stop may have
a good-faith defense to any civil suit"). So Schmit and Weber's argument in this regard
is really an argument about qualified immunity, and this Court addresses that argument
below. *See infra* Section I.A.3.

be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.

*Id.* at 568; *see also United States v. Hensley*, 469 U.S. 221, 231 (1985) (explaining that when police arrest an individual "in reliance merely on a flyer or bulletin," the constitutionality of that arrest "turns on whether the officers who *issued* the flyer [or bulletin] possessed probable cause to make the arrest").

Somewhat similarly, in *Colon*, the Second Circuit granted a defendant's motion to suppress evidence seized during a *Terry* stop[14] because the facts supplying the basis for "reasonable suspicion"—the requirement to effect such a stop—were known only to a civilian 911 operator and never communicated to the police. *Colon*, 250 F.3d at 134-35. Because no police officer possessed sufficient information to establish reasonable suspicion, the court held, the stop was unconstitutional. *Id.* at 134-37. And while the cases just discussed were criminal ones, the same principles hold in the civil context. *See Nzegwu v. Friedman*, 605 F. App'x 27, 30 (2d Cir. 2015) (summary order) (applying collective knowledge doctrine in section 1983 false arrest case and holding that whether arresting officer had probable cause to arrest was entirely dependent on whether officer who "communicated his knowledge of the case" to arresting officer had probable cause); *Rogers*, 120 F.3d at 453.

According to the second amended complaint, Schmit and Weber effected Singh's arrest at Petro's direction. Docket Item 46 at ¶¶ 32, 36-38. And because this Court

---

[14] In *Terry v. Ohio* "the Supreme Court carved out an exception to the general rule requiring probable cause for a search, permitting an investigating officer briefly to detain an individual for questioning if the officer has a reasonable suspicion 'that criminal activity may be afoot.'" *Colon*, 250 F.3d at 134 (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Such detentions are referred to as *Terry* stops.

already has held that, accepting Singh's allegations as true, Petro lacked probable

cause, *see Singh*, 2023 WL 2083572, at *3-4, Schmit and Weber cannot rely on that

instruction to establish probable cause.  After all, this Court cannot impute knowledge

sufficient to arrest to those defendants when—at least on the facts alleged in Singh's

complaint—that knowledge did not exist.

### 3.    Qualified Immunity

"Qualified immunity shields officials performing discretionary functions 'from

liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known.'"

*Rupp v. City of Buffalo*, 91 F.4th 623, 642 (2d Cir. 2024) (quoting *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982)).  So as this Court explained in its previous order, *see Singh*,

2023 WL 2083572, at *4, "[e]ven where actual probable cause does not exist, an officer

may be entitled to qualified immunity on a [section] 1983 false arrest claim if [the

officer's] actions were objectively reasonable or if 'arguable probable cause' existed at

the time of the arrest."  *Triolo v. Nassau County*, 24 F.4th 98, 107 (2d Cir. 2022)

(quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016)).  "A police officer has

arguable probable cause 'if either (a) it was objectively reasonable for the officer to

believe that probable cause existed, or (b) officers of reasonable competence could

disagree on whether the probable cause test was met.'"  *Figueroa*, 825 F.3d. at 100

(quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013)).

"Although a defendant may assert the defense of qualified immunity in a motion

to dismiss, the Second Circuit has held that it is very difficult for such a defense to

succeed at the pleading stage."  *Collins v. Ferguson*, 804 F. Supp. 2d 134, 140

(W.D.N.Y. 2011).  As the Second Circuit explained more recently, while "qualified immunity should be resolved 'at the earliest possible stage in litigation[,]' . . . [it] cannot be resolved . . . prior to ascertainment of the truth of the plausible factual allegations on which a finding of qualified immunity is premised."  *Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  "And since qualified immunity is an affirmative defense that is typically asserted in an answer, as a general rule, 'the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion.'"  *Id.* (alteration and internal citation omitted) (quoting *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983)).  Instead, qualified immunity is appropriate at the motion to dismiss stage only if "the facts supporting the qualified immunity defense . . . appear on the face of the complaint."  *Pourkavoos v. Town of Avon*, 823 F. App'x 53, 59 (2d Cir. 2020) (summary order) (alterations omitted) (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)).

As described above, Singh alleges that Schmit and Weber assisted in his arrest based only on the say-so of a detective from another police department; indeed, he notes that he "never was questioned prior to his arrest" nor was an arrest warrant ever obtained.  Docket Item 46 at ¶¶ 32-34, 36-39, 48.  That is, he alleges that Schmit and Weber arrested him in reliance on Petro's command and that their reliance was unreasonable.  *See id.*; *see also id.* at ¶ 96.

Not surprisingly, Schmit and Weber insist that it was entirely "reasonable" for them to rely on Petro's directive in effecting the arrest.  *See* Docket Item 60-1 at 15-16. And "[p]lausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a

16

reasonable officer to conclude that the necessary legal justification for [the officer's] actions exists." *Bilida v. McCleod*, 211 F.3d 166, 174-75 (1st Cir. 2000); *see Iosilevich v. City of New York*, 2024 WL 4362510, at *5 (E.D.N.Y. Sept. 30, 2024) ("A police officer who merely executes an arrest at the direction of another police officer is entitled to qualified immunity for false arrest in the absence of evidence that the officer should have questioned whether the arrest was lawful." (citing *Loria v. Gorman*, 306 F.3d 1271, 1288 (2d Cir. 2002))).

"Questions of historical fact regarding . . . officers' knowledge at the time of arrest are to be resolved by the jury," *Dufort v. City of New York*, 874 F.3d 338, 348 (2d Cir. 2017), and it is only when "there is no dispute as to what facts were relied on to demonstrate probable cause" that "the existence of probable cause is a question of law for the court," *id.* (quoting *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007)).  Here, the precise nature of Schmit's and Weber's knowledge and even the manner in which they received the directive to arrest Singh remains murky, and the parties disagree about whether the officers were justified in relying on Petro's directive.  *Compare* Docket Item 60-1 at 9, *with* Docket Item 62-3 at 6-8; *see also* Docket Item 46 at ¶¶ 32-33, 36-39, 48, 96.  Thus, whether Singh is correct that his arrest was unreasonable, or Schmit and Weber are correct that they acted reasonably in arresting Singh, is not something that this Court can resolve on a motion to dismiss.  *See Ndoye v. City of New Rochelle*, 2024 WL 308221, at *4 (S.D.N.Y. Jan. 26, 2024) (holding that "[t]he reasonableness of [an officer's] reliance on the information he received" from another source in deciding to arrest plaintiff was "a fact question not appropriate for resolution on the pleadings").

Put another way, Schmit and Weber may indeed be entitled to qualified immunity. But at this stage, this Court cannot determine the circumstances of Petro's instruction and Singh's arrest, and it therefore cannot decide whether Schmit and Weber are entitled to qualified immunity. *See Colon v. City of Rochester*, 419 F. Supp. 3d 586, 598-99 (W.D.N.Y. 2019) (denying police officers' motion to dismiss false arrest claims on qualified immunity grounds and stating that "the arrests [may have been] justified, or the officers may reasonably have believed them to have been justified[, but] the [c]ourt cannot make a determination in that regard on a motion to dismiss"). Such a determination must be left to summary judgment or trial. *See Rogers*, 120 F.3d at 455-56 (holding that officer was not entitled to summary judgment on qualified immunity grounds based on his reliance on statements of other officers about an "outstanding arrest warrant" for defendant because officers "never received a clear statement from a fellow law enforcement officer confirming the existence of probable cause"); *Bolger v. District of Columbia*, 608 F. Supp. 2d 10, 27-29 (D.D.C. 2009) (holding that officer was not entitled to qualified immunity at summary judgment stage notwithstanding her claim that she had relied on directives of her superior officers because she testified that she "was aware" of some circumstances that "potentially undermined the existence of probable cause" at time of arrest and her "testimony implie[d] that she carried out the arrests not because she had a reasonable belief that the directives of her superior officers were lawful, but rather because she believed she had no choice but to follow the chain of command").

In sum, based "on the face of the complaint," *McKenna*, 386 F.3d at 436, this Court cannot conclude that Schmit's and Weber's probable cause determinations were

objectively reasonable, *see Figueroa*, 825 F.3d at 100.  In fact, the answer to that question may well depend on exactly what Petro told Schmit and Weber, what they knew from other sources, and why they did not even try to question Singh before they arrested him—issues that presumably will be addressed in discovery.  So Schmit and Weber are not entitled to qualified immunity on Singh's false arrest and false imprisonment claims, at least not at this stage of the proceedings, and their motion to dismiss Singh's false arrest and false imprisonment claims therefore is denied.

### B.    Conspiracy to Violate Constitutional Rights

"In order to state a claim for conspiracy under [s]ection 1983, a plaintiff must allege: (1) an agreement between two or more actors (at least one a state actor); (2) to act in concert to cause an unconstitutional injury; and (3) an overt act done in furtherance of that agreement, causing damages."  *Ocasio v. City of Canandaigua*, 513 F. Supp. 3d 310, 323 (W.D.N.Y. 2021) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)).  Although "[a]llegations of direct evidence of conspiracy are not necessary" to state a viable conspiracy claim, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of . . . constitutional rights are properly dismissed." *D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 363 (S.D.N.Y. 2017) (quoting *Ciambriello*, 292 F.3d at 325).  So "[f]or claims of [section] 1983 conspiracies to survive a motion to dismiss, the plaintiff must provide some factual basis supporting a meeting of the minds."  *Id.* (alteration omitted) (quoting *Biswas v. City of New York*, 973 F. Supp. 2d 504, 533 (S.D.N.Y. 2013)).

This Court previously dismissed Singh's section 1983 conspiracy claims based on his assertions that officers from Suffolk County and the "Buffalo Warrant Squad" conspired to coerce and arrest him. *See Singh*, 2023 WL 2083572, at *7. The Court noted that the only non-conclusory factual allegation that Singh offered to corroborate the alleged conspiracy was the fact that eight to ten law enforcement officers came to his home to arrest him. *See id.* And it held that Singh's "vague and unsubstantiated" allegations of conspiracy failed to state a viable claim, although it gave him leave to amend to plead one. *See id.* (quoting *Kim v. Saccento*, 2022 WL 9583756, at *2 (2d Cir. Oct. 17, 2022) (summary order)).

Schmit and Weber argue that Singh again has failed to offer anything more than "vague and unsubstantiated" assertions of conspiracy. *See* Docket Item 60-1 at 10-11. They are correct. Indeed, in the second amended complaint, Singh makes essentially the same claims of conspiracy that he did in his initial complaint: He again says that the defendants came up with a plan to bring an excessive number of officers "to coerce . . . Singh's 'consent' and arrest him for a crime he did not commit" due to the pressure that the Suffolk County Police Department was facing to make headway on the unsolved robberies. *Compare* Docket Item 46 at ¶¶ 59-60, 123-24, *with* Docket Item 1 at ¶¶ 47-48, 113-14. But he alleges no facts that might support his theory.

More specifically, the second amended complaint does not allege any facts suggesting that Schmit and Weber, as New York State Police officers, entered into any kind of agreement with Petro or any other Suffolk County Police Department officer as a result of the pressure on that department to solve the robbery. *See generally* Docket Item 46. In fact, he does not allege any facts showing that Schmit and Weber were

even aware of that purported pressure. *See id.*; *see also Singh*, 2023 WL 2083572, at

*7. Nor does he provide anything more than his own say-so to show that Schmit and

Weber had any reason to conspire against him.

Such "vague and conclusory" allegations are not enough to state a claim for a

section 1983 conspiracy against Schmit and Weber. *See Butler v. Hesch*, 286 F. Supp.

3d 337, 363 (N.D.N.Y. 2018) (holding that plaintiff had not stated civil rights conspiracy

claim because although he had "adequately pled deprivations of his federal rights by

[some d]efendants[,] . . . [his] claims of concerted conduct [we]re considerably more

sparse[] and [we]re generally limited to particular incidents of abuse in which multiple

persons participated").

Singh's section 1983 conspiracy claims against Schmit and Weber therefore are

dismissed.

## II.    CROSS-MOTION FOR DISCOVERY

In response to the motion to dismiss, Singh cross-moved for expedited discovery

of the identities of the John Doe officers and to extend his time to serve those

defendants.[15]  Docket Item 62; Docket Item 62-3 at 19-24.  No defendant has

---

[15] Singh's second amended complaint names only two John Doe defendants, "the law enforcement officer[s] who drove . . . Singh from his home . . . to a gas station in or around Elmira, New York." Docket Item 46 at ¶¶ 9-10. But it is unclear whether he also seeks discovery regarding the identities of other officers. *See* Docket Item 62-3 at 19 (stating that Singh "seeks expedited discovery to identify additional defendants who were also involved in [his] unlawful arrest[,] . . . includ[ing] members of the Violent Felony Warrants Squad . . . , law enforcement officers that transported . . . Singh . . . to Elmira, and other law enforcement officers who were involved in [his] arrest"). Nonetheless, because Singh's second amended complaint names only two John Doe defendants—the John Doe officers—the Court understands the motion for expedited discovery and an extension of time to serve to refer only to the John Doe officers. If that is incorrect, Singh may raise that issue before Judge McCarthy.

responded to this motion, and the time to do so has expired.  *See* Loc. R. Civ. P.

7(b)(2)(B).

Unless the court orders otherwise, a plaintiff "may not seek discovery from any

source before the parties have conferred as required by" Federal Rule of Civil

Procedure 26(f).  Fed. R. Civ. P. 26(d)(1).  "Courts in the Second Circuit apply a flexible

standard of reasonableness and good cause when considering motions for expedited

discovery."  *Reinhardt v. City of Buffalo*, 2021 WL 3174018, at *2 (W.D.N.Y. June 7,

2021) (internal quotation marks omitted) (collecting cases).  And in doing so, courts

consider a "variety of factors," including

> the relative prejudices that will be suffered by the parties, the plaintiff's
> ability to make out a prima facie claim, the specificity of the discovery
> request, the availability of alternative means to obtain the information, the
> necessity of the information for the plaintiff's claim, the defendant's
> expectation of privacy, the proportionality of the request, the timing of the
> motion, and the diligence of the requesting party.

*Id.* (internal citations omitted).

Singh's request for expedited discovery regarding the names of the John Doe

officers is both reasonable and supported by good cause.  Singh's inability to obtain that

information certainly prejudices him by impeding the progress of this case, *see* Docket

Item 62-3 at 23, and none of the defendants have argued that granting the motion would

prejudice them.  In addition, Singh has made a prima facie claim at least on some

claims:  Singh alleges that the defendants arrested him in violation of his constitutional

rights, and this Court now has twice denied other defendants' motions to dismiss those

claims.  *See supra* Section I; *Singh*, 2023 WL 2083572, at *11.  The request certainly is

specific—he seeks the identities of the two officers who placed him under arrest and

transported him to a gas station where he was "turned . . . over to Suffolk County" law

enforcement officers, *see* Docket Item 46 at ¶¶ 9-10, 47-52—and undoubtedly necessary for his claims to proceed.  Moreover, Singh says that he has "exhausted all alternative methods to identify the John Doe [officers], include [Freedom of Information Law] requests and communications with" the defendants' counsel, Docket 62-3 at 23, and no defendant has contested that assertion or opposed his motion.

In sum, under the factors listed above, Singh's request is both reasonable and supported by good cause.  *See Reinhardt*, 2021 WL 3174018, at *2-3 (granting plaintiffs' motion for expedited discovery of the identities of police officers involved in "alleged warrantless searches of [p]laintiffs' residences" where plaintiffs had "already taken [several steps] to obtain [that] information," which was necessary for claims to proceed, and defendants had "not identified any prejudice they would suffer if the court grant[ed the] request").  Singh's motion for expedited discovery to identify the two John Doe officers involved in his allegedly unlawful arrest therefore is granted.

## CONCLUSION

For the reasons stated above, the motion to dismiss filed by defendants Schmit and Weber is GRANTED IN PART and DENIED IN PART.  Singh's false arrest and false imprisonment claims against those defendants may proceed, but his claims for conspiracy to violate his constitutional rights against the same defendants are dismissed.  In addition, Singh's cross-motion for expedited discovery is GRANTED.

The case is referred back to Judge McCarthy to supervise the expedited discovery and for further proceedings consistent with the referral order of May 23, 2023, Docket Item 27.  Singh's time to serve the John Doe officers is extended until 30 days after the completion of any expedited discovery.

SO ORDERED.

Dated:   March 21, 2025
         Buffalo, New York


                                        /s/ Lawrence J. Vilardo
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE