UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAVID C. SINGH,

                            Plaintiff,                **DECISION AND ORDER**

v.                                                     1:21-cv-813-LJV-JJM

ROBERT PETRO, *et al.*,

                            Defendants.

---

Plaintiff David Singh commenced this action pursuant to 42 U.S.C. §1983, asserting claims arising from his 2019 arrest and subsequent prosecution for armed robbery by Suffolk County Police detective Robert Petro and various New York State Police ("NYSP") officers. Amended Complaint [46][1]. The matter has been referred to me for supervision of pretrial proceedings by Hon. Lawrence J. Vilardo. [27].

Before the court is Singh's motion to compel discovery [65]. In a Decision and Order dated March 21, 2025, Judge Vilardo granted Singh's cross-motion for expedited discovery regarding the unidentified NYSP officers ([73] at 21-23), which moots section V of the current motion. *See* [65-2] at 9-12. Having reviewed the parties' submissions [65, 67, 69, 70, 71, 74], for the following reasons the remainder of Singh's motion is granted in part and denied in part.

---

[1]     Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

**BACKGROUND**

Singh served a Second Set of Document Demands and Interrogatories on Petro on May 17, 2024. [65-1], ¶3. Petro served a response on July 26, 2024. Id., ¶5. By letter dated August 7, 2024, Singh complained of various deficiencies in that response. Id., ¶7.

Regarding the Interrogatory responses, Singh alleged that: the responses were not verified; they failed to provide sufficient information about Petro's interview with the wife of an alleged robbery victim; and they failed to identify the individuals who collected a Poland Springs water bottle from Singh. [65-6] at 1-2. As for the Document Demands, Singh objected to Petro's invocation of law enforcement privilege in refusing to turn over unredacted copies of certain "Tour Report[s]" relating to the investigation; Petro's assertion that he was not in possession of video and phone records relating to Singh's whereabouts; and his assertion that he was not in possession of other documents and notes relating to the investigation. Id. at 3-4.

The parties exchanged correspondence over the next few months, including a second deficiency letter dated October 23, 2024. [65-1], ¶¶8-22. Petro later provided a supplemental production consisting of emails between Petro and NYSP officer Richard Noecker. Id., ¶23. Singh sent a third deficiency letter on January 20, 2025. Id., ¶25. In a letter dated February 7, 2025, Petro responded, asserting that he had produced all non-privileged information. Id., ¶26; [65-11]. Singh then filed this motion.

**DISCUSSION**

Singh contends that Petro's responses to Second Set of Document Demands and Interrogatories are insufficient. [65-2] at 2-9. He argues that Petro's responses to the interrogatories are unsworn, evasive, and incomplete. Id. at 3-5. He also argues that Petro's response to the second set of document demands is incomplete and improperly redacts certain

"Tour Report[s]". Id. at 6-7. Petro responds that he has provided all relevant documents in his possession, that his interrogatory responses reflect all the information in his possession, and the unredacted tour reports are both protected from disclosure by the law enforcement privilege and irrelevant. [71] at 2-9.

A.    **Petro's Interrogatory Responses**

Pursuant to Fed. R. Civ. P. ("Rule") 33(b)(3), "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath". The interrogatory responses must also be signed by "[t]he person who makes the answers". Fed. R. Civ. P. 33(b)(5). While "Rule 33 does not prescribe any particular form of verification" (Richard v. Dignean, 332 F.R.D. 450, 457 (W.D.N.Y. 2019) (citations omitted)), the "substantive elements" include a statement from the declarant "under penalty of perjury . . . that the matter sworn to is 'true and correct'". In re World Trade Center Disaster Site Litigation, 722 F.3d 483, 488 (2d Cir. 2013) (*quoting* 28 U.S.C. §1746). Petro's response to plaintiff's second set of interrogatories contains neither of these elements. *See* Petro's Responses to Plaintiff's Second Set of Interrogatories [65-5] at 1-3.

Petro does not offer any argument on the issue of verification, but filed a "Declaration in Opposition to the Motion" in which he "declare[d] under penalties of perjury" that "I have reviewed Plaintiff's Second Set of Interrogatories and after a review of my files can confirm that I have no further information responsive to the interrogatories to provide at this time". [71-1] at 1. While this declaration may be useful for other reasons, it fails to supply the critical elements of verification as to his original interrogatory responses. "Defendant['s] interrogatory responses are therefore legally insufficient and must be re-submitted in compliance

with Rule 33's oath requirement". Wright v. Rochester Sportfishing, Inc., 2025 WL 1024002, *3 (W.D.N.Y. 2025). Defendant Petro is hereby ordered to do so.

Singh also contends that the responses to the interrogatories are deficient, including Petro's inability to recall the names of several individuals involved in the investigation "at this time". [65-2] at 4-5; Responses to Interrogatories [65-5] at 1-3. A party is "obligated to make a reasonable inquiry to obtain information necessary to fully respond to [the opposing party's] interrogatories", including reviewing relevant materials. Richard, 332 F.R.D. at 460. Some of Petro's responses raise doubts about whether he made such an inquiry. For example, Petro's response to Interrogatory Number 5 states that he was unable to travel to Upstate New York to surveil or question Singh "[d]ue to restrictions related to the COVID-19 Pandemic". [65-5] at 2. However, the investigation and arrest of Singh culminated in 2019, which (as the court takes notice) predates any such pandemic restrictions.

Accordingly, though I acknowledge his declaration to the contrary, I direct defendant Petro to once again review his interrogatory responses, to make "a reasonable inquiry to obtain information necessary to fully respond", and to revise and supplement them as appropriate, not only as to the above-referenced discrepancy but also as to the requested names of investigators and witnesses.

**B.      Law Enforcement Privilege and the "Tour Report[s]"**

The law enforcement privilege exists "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation". In re Department of Investigation of City of New York, 856 F.2d 481, 484 (2d Cir. 1988); see In re The City of New York, 607 F.3d

923, 944 (2d Cir. 2010). "[T]he party asserting the law enforcement privilege bears the burden of showing that the privilege applies." In re The City of New York, 607 F.3 at 944. As always, "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged . . . , the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim". Fed R. Civ. P. 26(b)(5)(A); *see also* Local Rule of Civil Procedure 26(d)(1).

Petro claimed law enforcement privilege with respect to three "Tour Report[s]", which apparently describe police activity on the night of the attempted robbery and Singh's arrest. *See* Petro's Responses to Plaintiff's Second Set of Document Requests [65-5] at 5. Petro previously provided Singh with a redacted version of those reports. *See* id. Petro argues that the redacted portions contain officer names and other information about unrelated investigations that may be ongoing and could put officers or the investigation in danger. [71] at 5, 8-9. He also argues that the redacted portions are "wholly irrelevant" to this case. Id. In reply, Singh argues that such information could be relevant, as an investigation note suggests that police activity relating to a nearby incident potentially caused the robbers to flee. [74] at 6.

In either event, "because the Court does not have such documents or a privilege log before it, the Court is unable to determine whether any such documents are relevant, or if such documents are protected by the . . . law enforcement privilege." National Rifle Association of America v. Cuomo, 332 F.R.D. 420, 449 (N.D.N.Y. 2019). Therefore, Petro is ordered to produce copies of the unredacted and redacted versions of the tour reports to my chambers for *in camera* review within 30 days of this order. *See* id.

C.        **Sufficiency of Petro's Document Production**

Petro represents that he has produced "over 500 pages" of documents to Singh, and, having conducted a good-faith search of his records, has no further documents or information to produce. [71] at 6. Singh disputes this representation, arguing that the existence of additional documents is implied by certain documents that have been produced. [74] at 3-7. For example, email correspondence suggests that Petro subpoenaed and received phone records as part of his investigation, but Petro states that he is not in possession of such records. Id. at 4-5. Petro also apparently interviewed an eyewitness to the robbery and investigated another suspect, but he denies having any documents relating to such interview or investigation. Id. at 4, 5-6.

Obviously, "a party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain". Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 138 (2d Cir. 2007); see Bonano v. Tillinghast, 2021 WL 1117027, *4 (W.D.N.Y. 2021) ("the Court cannot compel defendants to produce documents that do not exist"). However, a party has a "duty to preserve" discoverable information, which attaches at the moment a party "reasonably anticipates litigation". In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation, 341 F.R.D. 474, 495 (S.D.N.Y. 2022). Furthermore, "where a party . . . lacks actual physical possession or custody of requested documents for purposes of Rule 34(a), such party may nevertheless be found to have control of the documents . . . if the party is legally entitled to the documents or has the practical ability to acquire the documents from a third-party". Gross v. Lunduski, 304 F.R.D. 136, 142 (W.D.N.Y. 2014).

Singh provides a screenshot of a portion of an email sent on October 3, 2017 to Petro appearing to have several attachments containing T-Mobile phone records. [74] at 5. To the extent those attached documents relate to Singh, Petro should provide them to him. In my

-6-

experience, it would be unusual for the recipient of an email to have the email but not its attachments. If for some reason Petro does not have them, he should make efforts to obtain them. If he cannot, then further discussion will be required as to what, if any, consequences should flow from the failure to maintain those records.

As for the other production issues alleged by Singh (*see* [74] at 3-7), I see nothing that necessarily implies the existence of other relevant documents. Certainly, Singh's counsel may explore those alleged deficiencies with Petro at his deposition. If the existence of additional documents is later discovered, consequences such as preclusion or other sanctions may be appropriate. See Shcherbakovskiy, 490 F.3d at 138, n. 1.

## CONCLUSION

For these reasons, plaintiff Singh's motion for discovery [65] is granted to the extent that defendant Petro shall, within 30 days of this order: (1) review, revise, supplement, and verify his responses to Plaintiff's Second Set of Interrogatories; (2) provide the court with unredacted copies of the "Tour Report[s]" at issue for the court's *in camera* review; (3) provide Singh with the attachments to the October 3, 2017 email referencing T-Mobile phone records or explain why those attachments should not be provided. The motion is otherwise denied.

Dated: May 9, 2025

                                       /s/ Jeremiah J. McCarthy
                                       JEREMIAH J. MCCARTHY
                                       United States Magistrate Judge